IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSE L. CAMACHO, MARIA CAMACHO, FABIAN E. CAMACHO, and LUIS E. CAMACHO, Plaintiffs | § § § § § § | |
| VS. | § § | **CIVIL ACTION NO. 5:19-cv-23** Jury Requested |
| FORD MOTOR COMPANY Defendant | § § § | |

### DEFENDANT FORD MOTOR COMPANY'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW FORD MOTOR COMPANY, Defendant in the above entitled and numbered cause, and files this Motion for Summary Judgment, and would show the Court as follows:

### I.
### INTRODUCTION:  BASIS FOR THE MOTION

This Motion is brought on the grounds that the undisputed evidentiary record developed in this case, even when viewed in the light most favorable to Plaintiffs, conclusively establishes the applicability of Texas' statute of repose defense such that Plaintiffs are barred from prosecuting this products liability case against Ford. Plaintiffs' claims all belong within a products liability action as defined by the Texas Civil Practice and Remedies Code. According to Tex. Civ. Prac. Rem. Code §16.012(b), "a claimant must commence a products liability action against a manufacturer or seller of a product before the end of 15 years after the date of the first sale of the product by the defendant." The summary judgment evidence demonstrates Ford's first sale of the product, a 2004 F-150 pickup truck, was on October 6, 2003, but Plaintiffs'

Original Complaint was not filed until January 10, 2019 (15 years plus 3 months and then 4 days later). Thus, Plaintiffs' claims against Ford are barred, and Ford is entitled to summary judgment.

## II.
## FACTS SUPPORTING THE MOTION

The following facts are undisputed in the summary judgment record and can be taken as true for purposes of the Motion:

(1)   Plaintiffs commenced this action by filing suit against Ford in the United States District Court for the Southern District of Texas, McAllen Division on January 10, 2019. *See*, Plaintiffs' Original Complaint [Document No. 1], on file herein.

(2)   The causes of action alleged by Plaintiffs against Ford are strict liability products claims, negligence claims, and claims for exemplary damages, for which Plaintiffs are seeking personal injury damages. *See*, Plaintiffs' Original Complaint [Document No. 1], on file herein.

(3)   The vehicle at issue, with a unique vehicle identification number (VIN) of 1FTRX12W24NA07194, was first sold by Ford on October 6, 2003., before January 10, 2004. *See*, Plaintiffs' Original Complaint [Document No. 1], page 1, paragraph 2, on file herein; *See, Deposition* of Fred Trudeau, Exhibit "A-1" hereto; Deposition of Michael O'Brien, Exhibit "A-2" hereto; MINI 999 document, Exhibit "A-5" hereto.

(4)   The vehicle at issue was then sold by independent dealership Leif Johnson Ford to its first retailer purchaser, Bruce Bachert, on December 23, 2003, again before January 10, 2004. *See, Deposition* of Fred Trudeau, Exhibit "A-1" hereto; Deposition of Michael O'Brien, Exhibit

"A-2" hereto; Deposition of Robert J. Pascarella, Exhibit "A-3" hereto; Deposition of Bruce Bachert, Exhibit "A-4" hereto.

## III.
## ISSUES OF LAW SUPPORTING THE MOTION

(1) For purposes of the Texas statute of repose, a "products liability action" means any action against a manufacturer or seller for recover of damages or other relief for harm allegedly caused by a defective product, whether the action is based in strict liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories, and whether the relief sought is recovery of damages or any other legal or equitable relief, including a suit for: (a) injury or damage to or loss of real or personal property; (b) personal injury; (c) wrongful death; (d) economic loss; or (e) declaratory, injunctive, or other equitable relief. *See*, Tex.Civ. Prac. Rem. Code §16.012(a)(2), §82.001.

(2) A claimant must commence a products liability action against a manufacturer or seller of a product before the end of 15 years after the date of the first sale of the product by the Defendant. *See*, Tex.Civ. Prac. Rem. Code §16.012(b).

(3) Plaintiff must present more than a scintilla of evidence to defeat the Motion for Summary Judgment. This evidence must do more than create a metaphysical doubt. *See, Matshushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87 (1986).

(4) A statute of repose protects parties from the burden of indefinite potential liability and represents a response to the inadequacy of the traditional statute of limitation, whose time periods begin upon discovery of the claim or upon occurrence of the injury. *See, Boeker v. Syptak*, 916 S.W.2d 59, 62 (Tex.App. – Houston [1st Dist.] 1996, no writ).

(5)   Applicability of the statute of repose is an area of substantive state law, to be analyzed by this federal court using state law in a diversity case. *See, Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817 (1938). *See also, Marchesani v. Pellerin-Milnor Corp.* 269 F.3d 481, 491 (5th Cir. 2001) (analyzing a Tennessee statute of repose); *Denman by Denman v. Snapper Div.*, 131 F.3d 546 (5th Cir. 1998) (regarding Mississippi products liability statute of repose),

(6)   Statutes of repose are different from statutes of limitations, because while a statute of limitations bars a cause of action sometime after a legal injury, a statute of repose may bar a cause of action before it ever accrues, that is, even before the legal injury occurs. *See, Perez v. Lear Sigler Inc., et. al,* 797 S.W.2d 222, 233 (Tex.App.- Corpus 1990) (citing Tex. Bus. & Comm. Code § 2.725). *See also, Trinity River Auth. v. URS Consultants, Inc.,* 889 S.W.2d 259, 261 (Tex. 1994).

(7)   A claimant must commence a products liability action against a manufacturer or seller of a product before the end of 15 years after the date of the sale of the product by the defendant. Because the plain language of Texas Civil Practice & Remedies Code § 16.012 "sets a period of time within which an action may be brought," the statute is a statute of repose. *See, Johnson v. City of Ft. Worth,* 774 S.W.2d 653, 654 n. 1 (Tex.1989); *Holubec v. Brandenberger,* 111 S.W.3d 32, 37 (Tex.2003).

(8)   The "sale of the product that triggers the statute of repose is the first sale of the product by the manufacturer, whether or not that sale was to a consumer. *Dalfrey v. Boss Hoss Cycles, Inc.*, 456 Fed.Appx. 329 (5th Cir. 2011).

(9)   Statutes of repose were intended to be applied retroactively. *See, Texas Gas*

*Exploration Corp. v. Flour Corp.*, 828 S.W.2d 28, 32 (Tex.App.-Texarkana 1991, writ granted, order withdrawn, writ denied).

## IV.
## ARGUMENT AND AUTHORITIES

### A. Substantive Law Applied on Statute of Repose

The statute of repose is substantive law as interpreted under the doctrine established in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817 (1938). Applicability of the statute of repose is an area of substantive state law, to be analyzed by the court using state law in a diversity case. *See, Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817 (1938). *See also, Marchesani v. Pellerin-Milnor Corp.* 269 F.3d 481, 491 (5th Cir. 2001) (analyzing a Tennessee statute of repose); *Denman by Denman v. Snapper Div.*, 131 F.3d 546 (5th Cir. 1998) (regarding Mississippi products liability statute of repose), *see also, Corbally v. W.R. Grace & Co.,* 993 F.2d 492 (5th Cir. 1993)(analyzing Tex.Civ.Prac. & Rem. Code §16.008.(a)'s statute of repose for claims against a registered or licensed architect or engineer).

### B. The Legal Standard for Summary Judgment

As the movant, Ford has the initial burden to show from the evidence in the summary judgment record that there is "no genuine issue as to any material fact." Fed.R.Civ.Proc. 56(c). Once the movant meets its burden of showing no genuine issue as to any material fact or an affirmative defense, the burden shifts to the non-movant to designate specific facts showing the existence of a genuine issue for trial or produce evidence to the contrary. *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *see also Forsyth v. Barr*, 19 F.3d 1527 (5th Cir. 1994). A party may not rest upon mere allegations or denials within the pleadings. Where a party bears the burden of proof at trial, it must ". . . make a showing sufficient to establish the

existence of each essential element to [its] case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). An alleged factual dispute will not defeat the motion unless it is genuine and material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Plaintiff must present more than a scintilla of evidence to defeat the Motion for Summary Judgment. This evidence must do more than create a metaphysical doubt. *Matshushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87 (1986). Plaintiff must produce evidence upon which a jury could reasonably base a verdict in his favor. *Anderson, supra,* 477 U.S. at 249. Unsubstantiated opinions and speculation do not suffice. *Forsyth, supra.*

In this Motion, Ford addresses Plaintiffs' product's liability claim as being barred by the statute of repose. The above seminal decisions on summary judgment procedure establish that summary judgment shall be granted upon conclusively establishing an affirmative defense as a matter of law. Ford is entitled to summary judgment as a matter of law on each of these causes of action, and therefore, on the whole case, based upon its statute of repose defense.

### C. Plaintiffs' Claims Barred as a Matter of Law

1. Plaintiffs' case is a "products liability action" subject to Tex. Civ. Prac. Rem. Code §16.012.

Plaintiffs' Complaint clearly alleges causes of action that are subsumed within Texas Civil Practice & Remedies Code's definition of a products liability action. A "products liability action" is any action against a manufacturer or seller for recover of damages or other relief for harm allegedly caused by a defective product, whether the action sounds in strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories, and whether the relief sought is recovery of damages or any other legal or equitable relief, including a suit for: (a) injury or damage to or loss of real or

personal property; (b) personal injury; (c) wrongful death; (d) economic loss; or (e) declaratory, injunctive, or other equitable relief. *See,* Tex. Civ. Prac. Rem. Code §16.012(a)(2), §82001. Plaintiffs allege Ford is liable in strict products liability, for negligence, and for alleged conduct they claim deserves exemplary damages for alleged defects in their 2004 Ford F-150 they claim caused them personal injuries and related damages, so they thus assert products liability claims under the statute's definition.

Since it is clear Plaintiffs have brought a products liability action, the Tex.Civ.Prac. & Rem. Code §16.012(a)(2) statute of repose narrowing the period of time in which a plaintiff can bring such claims applies. "This statute of repose protects parties from the burden of indefinite potential liability and represent a response to the inadequacy of the traditional statute of limitation, whose time periods begin upon discovery of the claim or upon occurrence of the injury." *See, Boeker v. Syptak,* 916 S.W.2d 59, 62 (Tex.App. – Houston [1st Dist.] 1996, no writ).

        2. Plaintiffs' case is barred because it was filed more than 15 years after the vehicle's first sale by the Defendant.

A claimant must commence a products liability action against a manufacturer or seller of a product before the end of 15 years after the date of the first sale of the product by the defendant. *See,* Tex. Civ. Prac. Rem. Code §16.012(b). Plaintiffs' Ford F-150 had the unique vehicle identification number (VIN) of 1FTRX12W24NA07194, *see,* Plaintiffs' Original Complaint, page 1, paragraph 2, on file herein, and was first sold by Ford on October 6, 2003 and then to its first retail purchase after that, on December 23, 2003. Plaintiffs commenced this action by filing suit in the United States District Court for the Western District of Texas on January 10, 2019. *See,* Plaintiffs' Original Complaint, on file herein. Therefore, Defendant Ford

thus first sold Plaintiffs' vehicle over 15 years before the commencement of this action, meeting the statutory requirements of Tex.Civ. Prac. Rem. Code §16.012(b). Plaintiffs are barred from arguing for liability against Ford in a products liability action.

Plaintiffs apparently intend to argue that the vehicle could not be considered to have had its first sale until it was duly registered after its first retail sale, on or about January 24, 2004. Plaintiffs must make that argument, because it is the only way they can argue for a sales date within the 15-year period in which suit was permitted. However, both Plaintiffs' claim that the first retail sale must have occurred and that the vehicle must have been registered in order for the statute of repose time period to run is contrary to Texas law.

The only cases interpreting the relevant sale date under Tex.Civ.Prac. & Rem. Code §16.012(a)(2) have determined that it is the wholesale date, when the product was sold by the manufacturer to a dealer, and not the first retail sale date, that applies under this statute[1]. In *Dalfrey v. Boss Hoss Cycles*, 456 Fed.Appx. 329, 330 (5th Cir. 2011), the Court noted that the key to the statute was the meaning of "date of sale" and stated, "'[a] sale, in its most basic terms, includes the following elements: (1) the thing sold, which is the object of the contract; (2) the consideration or price to be paid for the thing sold, and (3) the consent *333 of the parties to exchange the thing for the price.'" The Court further pointed out that other jurisdictions' cases finding that date of sale was calculated from the sale to the ultimate consumer were "inapposite to the interpretation of the Texas statute because those states' statues all describe the statute

---

[1] By definition, the wholesale sale date has to occur prior to the first retail sale date (since the retail seller obtains ownership and thus the ability to sell to a retail purchaser the product through its wholesale purchase). For that reason, in some prior cases, counsel for Ford has simplified its argument on statute of repose issues by referring only to the date of the first retail sale when both sales took place more than 15 years before suit was filed. Contrary to any aspersions that may be cast by Plaintiffs' counsel, such simplification has not involved mis-stating terms or indicating that a first retail sale does not mean a prior wholesale sale has occurred.

period in which to file suit as beginning with the 'use' or consumption of the product." *Id.* at 331.  Calculating the statute of repose period starting with Boss Hoss' wholesale of its manufactured motorcycle kit to Richardson Cycles, the Court reasoned:

> We think that based on Texas's rules of statutory construction and the plain meaning of the statute, the relevant "date of sale" under the Texas products liability statute of repose is the date of first sale regardless of whether that is to a consumer. Applying that definition to the facts of this case, Boss Hoss sold the Tezanos motorcycle kit to Richardson Cycles based on Richardson Cycles' order and Richardson Cycle paid Boss Hoss for that kit. Based on this deal, Boss Hoss delivered the Tezanos motorcycle kit to Richardson Cycles in July 1995.

*Id.* at 333.

*See also, Zaragosa v. Chemetron Investments, Inc.*, 122 S.W.3d 341 (Tex. App. – Fort Worth 2003)(only relevant sale for purposes of statute of repose is sale by the defendant);

Here, both Ford's original wholesale sale of the vehicle to its dealer and the first sale to a consumer took place more than 15 years prior to the filing of suit. By definition and as a matter of fact, the dealership acquired the vehicle from Ford before selling it to an individual purchaser, as explained by the President of the Leif Johnson dealership Fred Trudeau. *See,* Deposition of Fred Trudeau, page 57, lines 10 – 25, page 58, line 10 – page 59, line 2, and page 61, line 22 – page 63, line 2, Exhibit "A-1" hereto. In fact, Ford had sold the vehicle to Leif Johnson Ford and Leif Johnson Ford had purchased the vehicle from Ford at the moment in left the Ford factory. *See,* Deposition of Fred Trudeau, page 58, line 10 – page 62, line 8, Exhibit "A-1" hereto. Ford's corporate representative Michael O'Brien also explained that Ford's wholesale sale to the dealership would occur on the date that the vehicle was released from the factory, ***see,*** Deposition of Michael O'Brien, page 16, lines 3 – 11, and page 17, line 19 - page 18, line 6, Exhibit "A-2" hereto. Ford transferred ownership rights to the dealership when the vehicle was

released for shipment to the dealer at the factory. *See,* Deposition of Michael O'Brien, page 31, line 17 – page 32, line 3, Exhibit "A-2" hereto. Ford's documents and the testimony from its company representative Michael O'Brien conclusively establish the date that Ford sold the F-150 to Leif Johnson Ford was October 6, 2003, substantially prior to the critical date for purposes of the statute of repose (i.e, prior to January 10, 2004). The governing contract between Ford and its dealers is the Sales and Service Agreement, *see* Deposition of Fred Trudeau, page 77, lines 6 – 15, Exhibit "A-1" hereto, which defines the sale from Ford to the dealer as taking place when Ford delivers the vehicle to the carrier or dealer, whichever occurs first. *See,* Sales and Service Agreement, attached to Affidavit of Alison D. Kennamer as Exhibit "A-6" hereto. The transaction is documented in Ford's MINI 999 as the "Release Date." (*See,* Deposition of Michael O'Brien, page 16, line 3- page 17, line 1, page 20, line 23 –page 21, line 5, and page 64, lines 1-3, Exhibit "A-2" hereto; MINI 999, Exhibit "A-5" hereto. Ford's corporate representative on the date of the sale, Michael O'Brien, confirmed that the Release Date is the date when Ford receives payment from the dealer or its lender, releases the vehicle to the carrier, and transfer's ownership to the dealership. *Id.* He added that the release date always coincides with the wholesale date. *Id.*[2]

Several sources of evidence also confirm that the first retail buyer, Mr. Bruce Bachert, purchased the vehicle -- by agreeing to purchase the vehicle, obtaining the loan for the vehicle, and documenting the sale with contract paperwork -- on December 23, 2003: purchaser Bruce

---

[2] In addition, by definition the lien date and first retail sale date of December 23, 2003, demonstrates by definition that Leif Johnson's initial wholesale purchase of the vehicle from Ford occurred no later than that date (and almost certainly earlier). *See,* Deposition of Fred Trudeau, page 62, line 9 – page 67, line 15, Exhibit "A-1" hereto.

Bachert's own testimony and copies of the original sales records he received; *see,* Deposition of Bruce Bachert, page 9, line 1 – page 14, line 11, page 16, lines 13 – 23, page 20, lines 10 – 16, and Exhibits 23, 24, 25, 28, Exhibit "A-4" hereto; the date of the lien as reflected on the Texas Certificate of Title and the dealership's paperwork; *see,* Deposition of Fred Trudeau, page 51, line 13 – page 52, line 9; page 53, line 6 – page 54, line 7 and Exhibit 2 thereto, Exhibit "A-1" hereto (Date of Lien on Certificate of Tile as December 23, 2003); Deposition of Fred Trudeau, page  54, line 25 – page 55, line 13; page 56, line 8 - page 57, line 4 and Exhibit 4 thereto, Exhibit "A-1" hereto  (Leif Johnson paperwork dated  December 23, 2003, coinciding with date of sale); and Ford's internal documentation reflecting the date that Leif Johnson Ford reported the vehicle as sold; *see* Deposition of Michael O'Brien, page 63, lines 9 – 14 "Exhibit "A-2" hereto; MINI 999, Exhibit "A-5" hereto.  Ford's documentation, populated from its long-standing North American Vehicle Information System ("NAVIS") database, also reflected the retail sale date of December 23, 2003, as input by the dealership.  Deposition of Robert J. Pascarella, page 15, line 24 – page 16, line 8, and page 25, line 15 – page 26, line 16, Exhibit "A-3" hereto.

Plaintiffs' counsel will likely try to use the Texas Transportation Code's requirement that registration be included in its definition of "first sale" as part of the requirements for prompt vehicle registration to argue that this vehicle could not be considered sold until it had not only been sold but registered. *See,* Tex. Transp. Code §501.002(5).  This would ignore the Texas Transportation Code's own dictate that the Texas Business & Commerce Code's definition of sale trumps that of the Texas Transportation Code. *See,* Tex. Transp. Code §501.005 ("Chapters

1-9, Business & Commerce Code, control over a conflicting provision of this chapter."). In turn, Texas Business & Commerce Code defines a sale in the much more simple terms of *Dalfrey:*

> ... A "sale" consists in the passing of title from the seller to the buyer for a price (Section 2.401). ...
>
> Tex. Busi. & Comm. Code 2.106
>
> Each provision of this chapter with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title. Insofar as situations are not covered by the other provisions of this chapter and matters concerning title become material the following rules apply:
>
> (a) Title to goods cannot pass under a contract for sale prior to their identification to the contract (Section 2.501), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this title. Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the chapter on Secured Transactions (Chapter 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.
>
> (b) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place ...
>
> Tex. Busi & Comm. Code § 2.401.

These definitions in the Texas Business & Commerce Code are entirely consistent with Ford corporate representative Michael O'Brien's explanation that at delivery to the dealer, Ford transferred legal ownership to the dealer and retained only a financial security interest and not an ownership interest. *See,* Deposition of Michael O'Brien, page 32, line 20 – page 33, line 4, and page 56, lines 13 – 21, Exhibit "A-2" hereto. Moreover, Plaintiffs' interpretation would impart a different definition of the applicable sale on motor vehicles than on any other product when applying Tex.Civ.Prac. & Rem. Code §16.012(a)(2), which applies to all products. In other

words, Plaintiffs' interpretation simply would not make sense from a statutory construction standpoint. While there are defined terms in the statute, "sale" is not one, although the legislature could have easily defined "sale" and could have done more specifically for vehicles that for other products if that was its intent. For undefined terms in civil statutes, like "sale" in Tex.Civ.Prac. & Rem. Code §16.012(a)(2), the legislature dictates that the generally accepted meaning should be used. Tex. Gov't Code 312.002.

3. Statutes of repose require no specific notice to the consumer.

Statutes of repose are distinguishable from the usual statutes of limitations, which operate merely to bar enforcement of a right; these statutes take away the right altogether after the stated period of time. These statutes represent a response by the legislature to the inadequacy of traditional statutes of limitations and are specifically designed to protect Defendants from protracted and extended vulnerability to lawsuits. Unlike a statute of limitations, which begins running upon accrual of the cause of action, a statute of repose can extinguish a claim before it exists. One of the virtues of statutes of repose is that they are easy to apply, as shown above. This is a statute of repose because it "runs from a specified date without regard to accrual of any cause of action." *Trinity River Auth. v. URS Consultants, Inc.,* 889 S.W.2d 259, 261 (Tex. 1994). *See also, Boeker v. Syptak,* 916 S.W.2d 59, 62 (Tex.App. – Houston [1st Dist.] 1996, no writ), *Perez v. Lear Sigler Inc., et. al,* 797 S.W.2d 222, 233 (Tex.App.- Corpus 1990), *rev'd in part on other grounds,* 819 S.W.2d 470 (Tex. 1991) (citing Tex. Bus. & Comm. Code § 2.725). The reason the difference is significant is that there is no concept of "discovery" of the cause of action delaying application of the statute of repose; the Texas legislature has made a policy decision that overall certainty for product manufacturers should cut off such claims whether or

not an ultimate user would be able to know he had a claim or that it would be barred.

## V.
## CONCLUSION

Because Plaintiffs' claims are barred by Texas' applicable statute of repose, Ford has conclusively established its defense to liability as a matter of law. Therefore, Ford is entitled to summary judgment in its favor on the whole case.

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully requests that this Court grant Motion for Summary Judgment, and that this Defendant have such other and further relief to which it may show itself justly entitled to receive.

Respectfully submitted,

*/s/ Warren E. Platt with permission Alison D. Kennamer*
Warren E. Platt
Texas Bar No. 00785568
Email: wplatt@swlaw.com
SNELL & WILMER, L.L.P.
One Arizona Center
400 East Van Buren St. Suite 1900
Phoenix, AZ  85004-2202
(602) 382-6000
Fax (602) 382-6070

And

Jaime A. Saenz
Texas Bar No. 17514859
Email:  ja.saenz@rcclaw.com
Alison D. Kennamer
Texas Bar No. 11280400
Email:  ad.kennamer@rcclaw.com
COLVIN, SAENZ, RODRIGUEZ & KENNAMER, L.L.P.
1201 East Van Buren St.
Brownsville, Texas 78520
(956) 542-7441
Fax (956) 541-2170
ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was served upon all counsel of record, to-wit:

>R.W. Armstrong, II
>Email: rvvaii@tafpHc.com
>THE ARMSTRONG FIRM, PLLC
>310 S. St. Mary's St., Suite 2700
>San Antonio, Texas 78205
>(210) 277-0542
>Fax (210) 277-0548
>
>Lee Brown
>Email: lbrown@leebrownlaw.com
>THE BROWN LAW FIRM
>750 N. Saint Paul St., Suite 1680
>Dallas. Texas 75201
>(214) 624-3400
>Fax (214) 624-3401
>
>Nathaniel Mack, Ill
>Email: ninack@rhacktexaslaw.com
>LAW OFFICE NATHANIEL MACK, PLLC
>1777 NE Loop 410, Suite 600
>San Antonio, Texas 78217
>(210) 333-6225
>Fax (210) 855-3152

by certified mail, return receipt requested, facsimile transmission, and/or hand delivery pursuant to the Federal Rules of Civil Procedure on the 8th day of July, 2019.

>             /s/ Alison D. Kennamer
>             Alison D. Kennamer