# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSE L. CAMACHO, MARIA CAMACHO, FABIAN E. CAMACHO, and LUIS E. CAMACHO | § § § § | |
| *Plaintiffs,* | § | Civil Action No. SA-19-CV-23-XR |
| v. | § § | |
| FORD MOTOR COMPANY, | § § § | |
| *Defendant.* | § | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

On this date, the Court considered Defendant Ford Motor Company's motion for summary judgment (docket no. 28), Plaintiffs' response (docket no. 29), Defendant's reply (docket no. 34), and Plaintiffs' sur-reply (docket no. 41). In addition, the Court considered Plaintiffs' objections to Ford's evidence (docket no. 30) and Defendant's response (docket no. 36). After careful consideration, Defendant's motion for summary judgment is GRANTED.

## BACKGROUND

This is a products liability action arising out of a rollover crash of a 2004 Ford F-150 truck on August 6, 2017 near Nuevo Laredo, Mexico. Docket no. 32. That crash caused serious injuries to the driver Jose Camacho, his wife Maria, and their sons Fabian and Luis (collectively, "Plaintiffs").[1] On January 10, 2019, Plaintiffs brought this action against Defendant, claiming strict

---

[1] Plaintiffs claim that Fabian Camacho was a minor at the time of the crash. Docket no. 29 at 21. In support, they provide Fabian's passport photo showing his birth *year* of 1999. Docket no. 29-5 at 2. Though Plaintiffs claim in their briefing that Fabian was born on December 14, docket no. 29 at 21, Plaintiffs redacted both Fabian's birth date and month from his passport—the only summary judgment evidence as to his age. Docket no. 29-5 at 2. The Court cannot, from the birth year alone, determine that Fabian was a minor on August 6, 2017. For instance, if Fabian were born on August 5, 1999, he would have been 18 years and one

1

products liability, negligence, and claims for exemplary damages. Docket nos. 1, 32. Plaintiffs are Texas citizens, and Defendant is a citizen of both Michigan (principal place of business) and Delaware (state of incorporation). Docket no. 32. The claim exceeds $75,000 and, therefore, this Court exercises diversity jurisdiction over the matter. 28 U.S.C. § 1332(a).

Defendant manufactured the vehicle at issue, a truck with a vehicle identification number (VIN) of IFTRX12W24NA07194 ("the truck"). Docket no. 28-6 at 1. The truck was "released" from Defendant on <u>October 6, 2003</u>. Docket no. 28-6 at 1.[2] That "release," or wholesale date, is when Defendant physically released the truck to the carrier and transferred ownership to the dealership. Docket no. 28-3 at 5–7; no. 29-16 at 14–18. According to Defendant's testimony and the relevant contract between Defendant and the dealership, ownership passed to the dealership, Leif Johnson Ford ("the dealership"), at that time. Docket no. 28-3 at 5, 9, 13 ("It was released to the carrier on October 6th, and as defined in the Sales and Service Agreement, title, thus ownership, passes to the dealer at that time."); *see also* docket no. 28-7 at 14–15 (Sales and Service Agreement, reading "Title to each COMPANY PRODUCT purchased by the dealer shall…pass to the Dealer…upon delivery thereof to the carrier or to the Dealer, whichever occurs first, but the Company shall retain a security interest in and right to repossess any product until paid therefor."). Fred Trudeau, the dealership's president, confirmed that as soon as the truck "rolls off of the assembly line," the dealership owns and insures it. Docket no. 28-2 at 12–13; *see also id.* at 16

---

day old at the time of the crash. Nonetheless, the Court finds below that Fabian's status as a minor is immaterial because the Texas statute of repose does not toll for minor age. *Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P. v. Rankin*, 307 S.W.3d 283, 286 (Tex. 2010).

[2] Plaintiffs raise a relevancy objection to Defendant's evidence of the wholesale on October 6, 2003. Docket no. 30 at ¶ 2. Plaintiffs' relevance objection only stands if the Court adopts the definition of "sale" from the Texas Transportation Code, which would make the date of licensing and registration the relevant sale date. The Court, however, does not do so, and accordingly, Plaintiffs' relevancy objections are denied.

("Q: And when does Leif Johnson buy the vehicle…? A: The second it rolls off the assembly line."); *id.* at 19 ("As soon as it leaves Ford, we own it.").

The dealership continued to own the truck until it was sold to its first retail purchaser. *Id.* at 19. The first retail purchaser, Bruce Bachert ("Bachert"), purchased the truck on December 23, 2003. Docket nos. 28-6 at 1 (sales date on MINI-999 Report)[3]; 29-2 at 12 (showing lien date on Texas Certificate of Title); no. 28-5 at 16 (financing paperwork)[4], 20 (insurance agreement); 28-3 at 14 (O'Brien deposition); 28-2 at 7, 10–11 (Trudeau deposition). Bachert applied for title with Travis County on January 10, 2004, and title was issued on January 21, 2004. Docket no. 29-2 at 2; no. 28-2 at 34 (Certificate of Title).

---

[3] Plaintiffs object to the use of the MINI-999 Report. Docket no. 30 at ¶¶ 8–9. One of the bases—that the defense witness admits the MINI-999 does not include the relevant licensing and registration dates—appears to be a relevancy objection and is overruled for the same reasons as above. *See supra*, note 2.

As to the hearsay objection, the Report falls within the business records exception. FED. R. EVID. 803(6). Selling vehicles and creating such records is an undisputedly regular practice at the dealership, and Pascarella, a Ford engineer and qualified witness, testified to the manner and regularity in which the relevant information is input into Ford's North American Vehicle Information System (NAVIS) database and then printed out in a MINI-999 Report. *See* docket nos. 28-4 at 7; 29-4 at 32; *see also Martinez v. Ford Motor Co.*, No. 14-CV-376, 2014 WL 6680521, at *2–4 (W.D. Tex. Nov. 25, 2004) (admitting a MINI-999 report under the business records exception).

The records also fall within the residual exception, as the totality of the evidence—all of the paperwork contains the same dates—supports a sufficient guarantee of trustworthiness, and the evidence is the most probative, indeed likely the only probative, evidence the Defendant may find for a transaction that occurred over fifteen years ago. FED. R. EVID. 803(7).

[4] Plaintiffs object to the financing paperwork as hearsay and unauthenticated. Docket no. 30 at ¶ 4. Bachert, however, is a witness with personal knowledge of the date he purchased the truck, and as such, his testimony is sufficient to support a finding that the item is what Defendant claims it is. FED. R. EVID. 901(a)-(b)(1); docket no. 28-5 at 12–13.

As to the hearsay objection, the relevant paperwork also falls within the business records exception. FED. R. EVID. 803(6). The record was kept in the course of a regularly conducted business activity (selling vehicles), making such sales records was a regular practice of the dealership, the record was made at the time of the transaction by an employee with knowledge of the relevant sale, and the president of the dealership testified to those conditions. Docket no. 28-5 at 13; no. 28-2. Nor have Plaintiffs shown any specific untrustworthiness as to the financing paperwork, particularly where the relevant dates are repeated several times throughout other paperwork. *See, e.g.* docket no. 28-2 at 34 (Texas Certificate of Title). And as with the MINI-999 Report, the Court finds such evidence further admissible under Rule 803(7) for the same reasons indicated above. *See supra*, note 3; FED. R. EVID. 807.

Plaintiffs raise the same evidentiary objections—authentication and hearsay—to the insurance paperwork. Docket no. 30 at ¶ 6. This objection is overruled for the same reasons.

## DISCUSSION

### I. Standard of Review

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the movant carries its initial burden, the burden shifts to the non-movant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991).

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the non-movant, or, in other words, that the evidence favoring the non-movant is insufficient to enable a reasonable jury to return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the non-movant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the non-moving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II. Analysis

### A. *The relevant "date of sale"*

This motion turns on a legal question, indeed a question of statutory interpretation: what is the "date of sale" for purposes of the Texas statute of repose?[5] Defendant claims the "date of sale" is either:

- October 6, 2003: when ownership of the truck passed from Defendant to the dealership, i.e. the wholesale date, or

- December 23, 2003: when the dealership sold the truck to Bachert, i.e. the first retail sale date.

Docket no. 28. Plaintiffs, in turn, claim the "date of sale" is either:

- January 10, 2004: when the truck was registered, or

- January 21, 2004: when the truck was licensed and titled,

Docket no. 29. Plaintiffs claim that either of those dates falls within the 15-year statute of repose, as the suit was filed on January 10, 2019.

In a case based on diversity jurisdiction such as this, the Court must apply the substantive law of the forum state. *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010) (citing *Erie R.R. Co. v.* Tompkins, 304 U.S. 64, 78 (1938)). Statutes of repose are substantive, not procedural, so Texas law applies. *See Barnett v. DynCorp Int., LLC*, 831 F.3d 296, 307 (5th Cir. 2016) (citing *Trinity River Auth. v. URS Consultants, Inc.-Texas.*, 889 S.W.2d 259, 261 (Tex. 1994)). "To determine Texas law, we look to decisions of the state's highest court, or in the absence of a final decision by that court on the issue under consideration, we must determine, in our best

---

[5] Plaintiffs concede that this lawsuit is a products liability action and that § 16.012 of the Texas Civil Practice and Remedies Code specifically applies to such products liability actions. Thus, Plaintiffs agree that "[t]he core dispute in this case is whether or not Plaintiffs' lawsuit was timely filed under Section 16.012…." Docket no. 29 at 8. The Court agrees and will accordingly narrow the focus of this order to the statute of repose issue.

judgment, how the state's highest court would resolve the issue if presented with it." *Citigroup, Inc. v. Fed. Ins. Co.*, 649 F.3d 367, 371 (5th Cir. 2011) (internal quotation marks omitted). The Texas Supreme Court has not addressed the definition of "date of sale" in § 16.012(b), so the Court is called upon to make an "*Erie* guess." *Dalfrey v. Boss Hoss Cycles, Inc.*, 456 F. App'x 329, 332 (5th Cir. 2011) (citing *Compliance Source, Inc. v. GreenPoint Mortg. Funding, Inc.*, 624 F.3d 252, 259 (5th Cir. 2010)).

Turning to the critical statute, § 16.012(b) of the Texas Civil Practices and Remedies codes reads in full:

> Except as provided by Subsections (c), (d), and (d–1), a claimant must commence a products liability action against a manufacturer or seller of a product <u>before the end of 15 years</u> after the <u>date of sale</u> of the product by the defendant.

TEX. CIV. PRAC. & REM. CODE § 16.012(b) (emphasis added). Such statutes of repose provide a "definitive date beyond which an action cannot be filed." *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 866 (Tex. 2009). The purpose of such statutes is to "eliminate uncertainties under the related statute of limitations and to create a final deadline for filing suit that is not subject to any exceptions, except perhaps those clear exceptions in the statute itself." *Rankin*, 307 S.W.3d at 286.[6] Unlike a statute of limitations, which "operate[s] procedurally to bar the enforcement of a right, a statute of repose takes away the right altogether, creating a substantive right to be free of liability after a specified time." *Galbraith*, 290 S.W.3d at 866. Once "the putative cause of action evanesces…life cannot thereafter be breathed back into it." *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 363 (5th Cir. 2005). "Thus, the purpose of a statute of repose is to provide 'absolute protection to certain parties from the burden of indefinite

---

[6] The relevant exceptions here include § 16.012(c) (extending the time to commence an action to the number of years the seller expressly warrants the useful life of the product, even if more than 15 years); (d) (extending the time period for latent diseases); and (d–1) (similar). The parties do not dispute that these statutory exceptions are inapplicable.

potential liability.'" *Id.* (quoting *Holubec v. Brandenberger*, 111 S.W.3d 32, 37 (Tex. 2003)). The Texas Supreme Court has recognized that "[t]he Legislature could reasonably conclude that the general welfare of society, and various trades and professions that serve society, are best served with statutes of repose that do not submit to exceptions even if a small number of claims are barred through no fault of the plaintiff…." *Rankin*, 307 S.W.3d at 287.[7] The defendant bears the burden of proving all factual requisites to the statute of repose's application. *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996).

The Court, then, must answer two questions in applying the statute of repose: (1) what is the relevant "date of sale" under the statute of repose, and (2) what constitutes a "sale"? Though the Texas Supreme Court has not addressed the term "date of sale," the Fifth Circuit, in addressing the precise issue at hand, held that "the relevant 'date of sale' under the Texas products liability statute of repose is the date of first sale *regardless of whether that sale is to a consumer*." *Dalfrey*, 456 F. App'x at 333 (emphasis added); *see also Martinez*, 2014 WL 6680521, at *4 ("As specifically stated in § 16.012(b), the relevant date of sale is the date on which the product was sold *by the defendant*—not the date on which it was purchased by the plaintiff.") (emphasis in original); *Zaragosa v. Chemetron Inv., Inc.*, 122 S.W.3d 341, 345–46 (Tex.App.—Fort Worth 2003, no pet.) (holding that sales by non-defendant, third parties are irrelevant in the applicability of § 16.012(b)). In *Dalfrey*, the Fifth Circuit reasoned that the Texas legislature did not adopt the more consumer-centric version of the statute of repose as adopted in other states, whose statutes instead fix the statutory period for suit, for example, "after the date of initial purchase *for use or consumption*." *Dalfrey*, 456 F. App'x at 333 (quoting N.C. GEN. STAT. § 1–50(6) (2008) (emphasis

---

[7] Practical policies underlying statutes of repose include preventing "defendants from answering claims where evidence may prove elusive due to unavailable witnesses (perhaps deceased), faded memories, lost or destroyed records, and institutions that no longer exist." *Rankin*, 307 S.W.3d at 287.

7

added)). The Texas statute, in contrast, contains no such language, instead fixing the relevant date as the "date of sale of the product *by the defendant*." TEX. CIV. PRAC. & REM. CODE § 16.012(b) (emphasis added).

Having established that the relevant date is the date of sale by the defendant, regardless of whether that sale is to a consumer, the Court must then determine what "sale" means. A sale includes the following elements: "(1) the thing sold, which is the object of the contract; (2) the consideration or price to be paid for the thing sold; and (3) the consent of the parties to exchange the thing for the price." *Dalfrey*, 456 F. App'x at 332–33 (quoting *John Wood Grp. USA, Inc. v. ICO, Inc.*, 26 S.W.3d 12, 20 (Tex.App.—Houston [1st Dist.] 2000, pet. denied)). Under the Texas Business and Commerce Code, a "'sale' consists in the passing of title from the seller to the buyer for a price," and such "title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place." TEX. BUS. & COMM. CODE § 2.106(a) (referencing § 2.401(b)). This definition tracks Black's definition of sale as "the transfer of property or title for a price." Black's Law Dictionary (11th ed. 2019) (citing U.C.C. § 2–106(1)); *see also Dalfrey*, 456 F. App'x at 332–33 ("By its 'plain and common meaning,' sale is a broad term.").

Plaintiffs urge this Court to, instead, adopt the definition in the Texas Transportation Code. Docket no. 29 at 8–10. Section 501.002(5) of that Code reads as follows:

(5) "First sale" means:

>(A) the bargain, sale, transfer, or delivery of a motor vehicle that has not been previously registered or licensed, with intent to pass an interest in the motor vehicle, other than a lien, regardless of where the bargain, sale, transfer, or delivery occurred; and

>(B) the registration or licensing of that vehicle.

TEX. TRANSP. CODE § 501.002(5). This statute forms the basis of Plaintiffs' assertion that the relevant sale date is either January 10, 2004 (when Bachert registered the truck) or January 21, 2004 (when Bachert licensed the truck). Docket no. 29.

There are three issues, however, with Plaintiff's suggestion that the Court adopt the Transportation Code's definition. First, the Transportation Code itself contains a preemption provision that the Business & Commerce Code controls over any conflicting provision in the Transportation Code. TEX. TRANS. CODE § 501.005. Second, Plaintiffs provide no case interpreting the Transportation Code definition as applicable to the products liability statute of repose, and "it is not for us to adopt innovative theories of…Texas law, but simply to apply that law as it currently exists." *Barnett*, 831 F.3d at 307 (quoting *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1217 (5th Cir. 1985)).

Third, using the Transportation Code definition would render meaningless the "by the defendant" phrase in the statute of repose, yet courts must construe statutes to give meaning to all of their words. TEX. GOV'T CODE § 311.021(2); *City of Amarillo v. Martin*, 971 S.W.2d 426, 430 (Tex. 1998). Only consumers—not "manufacturers, importers, distributors, or dealers"—are required to register their vehicles under the Transportation Code. TEX. TRANS. CODE §§ 501.002(19) (defining owner), 501.022(a) (requiring such owners to register and apply for title). A manufacturer, like Defendant, cannot sell directly to such consumers but instead must sell through a licensed dealer. TEX. OCC. CODE § 2301.252. The sale "by a defendant" (if the defendant is a manufacturer), therefore, cannot carry with it a registration requirement because such sales cannot be to consumers who are required to register their vehicles. Accordingly, the Texas Transportation Code's registration requirement would render meaningless the statute of repose's

phrase "by the defendant" because the sale by a defendant like Ford cannot be to a consumer with a registration requirement.

Policy reasons further support denying the applicability of the Transportation Code definition to the statute of repose. First, vehicle manufacturers would be subject to potentially limitless liability if, for instance, the dealer failed to sell the vehicle to a consumer, or a consumer failed to register and license the vehicle. Without such registration or licensing, the vehicle would never be "sold" under the Transportation Code's definition, so a manufacturer would find no limit to its liability under the statute of repose. That does not comport with the statute of repose's purpose of eliminating uncertainties or providing "absolute protection for certain parties from the burden of indefinite potential liability." *Rankin*, 307 S.W.3d at 286; *Burlington*, 419 F.3d at 363. Second, applying the Transportation Code's definition of "sale" would result in a different standard applied to vehicle products liability actions than with any other product.

The statute of repose, therefore, runs from the "date of sale" of the product *by the defendant*, whether that is to a consumer or not, *Dalfrey*, 456 F. App'x at 333, and the relevant "sale" is when title passes to a buyer. TEX. BUS. & COMM. CODE § 2.106. And such title passes "at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest." *Id.* § 2.401. That sale occurred on <u>October 6, 2003</u> when Defendant sold the truck to the dealership. On that date, Defendant physically delivered the truck to the carrier and transferred ownership to the dealership pursuant to the Sales and Service Agreement. Docket nos. 29-4 at 36, 39; 28-3 at 13 ("It was released to the carrier on October 6th, and as defined in the Sales and Service Agreement, title, thus ownership, passes to the dealer at that time."); no. 28-7 at 14–15 ("Title to each COMPANY PRODUCT…shall…pass to the Dealer…upon delivery thereof to the carrier or to the Dealer,

10

whichever occurs first…."). Because the present case was filed on January 10, 2019—over fifteen years since the relevant date of sale by the defendant—the action is barred by the Texas products liability statute of repose. TEX. CIV. PRAC. & REM. CODE § 16.012(b).

B. *Tolling for minor age*

Plaintiffs claim that even if the Court found the other claims were barred by the statute of repose, Fabian Camacho's claims were timely filed because he was a minor at the time of the accident (August 6, 2017) and, therefore, the period with which he may bring an action was tolled until he reached the age of majority, four months and eight days after the accident (December 14, 2017). Docket no. 29 at 21–27. That would, therefore, extend the time with which Fabian's claims may be brought despite the statute of repose.

But here, the Court need not make an "*Erie* guess," as the Texas Supreme Court has ruled on this precise issue. "[U]nlike statutes of limitations, a statute of repose is not subject to judicially crafted rules of tolling or deferral." *Rankin*, 307 S.W.3d at 286; *see also Burlington*, 419 F.3d at 363–64 (refusing to toll Texas statute of repose). Indeed, "[a] statute of repose, by design, creates a right to repose precisely where the applicable statute of limitations would be tolled or deferred." *Rankin*, 307 S.W.3d at 290. After all, the purpose of statutes of repose is "to declare a no-exceptions cut-off point…." *Id.* at 291; *see also CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014) ("The repose provision is therefore equivalent to a 'cutoff,'" in essence an 'absolute…bar' on a defendant's temporal liability.") (internal quotations omitted). Indeed, the Supreme Court of the United States distinguished statutes of limitations from statutes of repose precisely on the issue of tolling. *Id.* at 9 ("Statutes of limitations, but not statutes of repose, are subject to equitable tolling…Statutes of repose…generally may not be tolled, even in cases of extraordinary circumstances beyond a plaintiff's control.").

Fabian Camacho's claims, therefore, are not tolled because the statute of repose does not toll for minor age. Accordingly, just as Plaintiffs' other claims are barred by the statute of repose, so too are Fabian's. Such a holding comports not only with binding caselaw, *see Rankin*, 307 S.W.3d at 290, but also with the policies underlying statutes of repose, providing an "absolute bar" on a defendant's temporal liability, even through no fault of Fabian Camacho. *Waldburger*, 573 U.S. at 8; *Rankin*, 307 S.W.3d at 287.

## CONCLUSION

For those reasons, Defendant's Motion for Summary Judgment (docket no. 28) is GRANTED.

The Clerk is DIRECTED to enter judgment in favor of Defendant and against Plaintiffs. Plaintiffs shall take nothing by their claims.

SIGNED this 16th day of January, 2020.

                              XAVIER RODRIGUEZ
                              UNITED STATES DISTRICT JUDGE